<u>VIA ECF</u>

The Honorable Judge Dale Ho
United States District Court for the
 Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:    *Bayer HealthCare LLC v. Johnson & Johnson, et al.*, Case No.
       26-CV-1479 (DEH)

Dear Judge Ho:

The undersigned counsel represent the parties in the above-captioned matter and write jointly in response to the Court's February 23, 2026 Order requesting a proposed schedule for adjudicating Plaintiff's motion for emergency injunctive relief.  Although we have met and conferred in an attempt to set a mutually acceptable schedule, the parties have reached an impasse on the schedule, although we agree that an evidentiary hearing is appropriate.  Per Your Honor's instructions, the parties respectfully set forth their respective positions below.[1]

**<u>Plaintiff's Position</u>**

Bayer requests the following proposed schedule: J&J shall file opposing papers on February 26, 2026; Bayer shall file reply papers on March 2, 2026 by 2:00 p.m. ET; and the hearing on Bayer's motion for emergency injunctive relief will be held on March 3, 2026.  Bayer requests an evidentiary hearing and will be prepared to have its witnesses attend and testify.

This schedule is appropriate and necessary here where Bayer is suffering irreparable harm in the marketplace due to J&J's false advertising campaign and patients and doctors are receiving erroneous information about their cancer therapy choices.  J&J has spread false claims that (a) patients with metastatic castration-sensitive prostate cancer treated with ERLEADA® have a 51% reduced risk of death compared to Bayer's NUBEQA®, and (b) ERLEADA®'s superiority is established by a real-world head-to-head analysis that adheres to rigorous FDA standards, has robust results, matched the two treatment arms, removed bias, and replicated the conditions of a randomized clinical trial.  J&J issued a press release to the world at large with these untrue claims to boost sales of its ERLEADA® product.  The harm to Bayer's reputation and the damage to its position in the prostate cancer therapy environment is exacerbated each day J&J's campaign persists. Further, J&J's false claims misinform health care providers and patients with prostate cancer who are currently making health care choices about competing prescription drugs based on inaccurate data about the medicines' survival benefit.

Bayer's proposed schedule is reasonable given that J&J sponsored the data analysis and has ready access to the scientists and data that it used to support its claims.  J&J has also known about Bayer's concerns since February 6, shortly after J&J launched its promotional campaign

---

[1] Defendants Johnson & Johnson and Janssen Biotech Inc. appear specially without submitting to personal jurisdiction in this Court, which they contend is lacking.

1

on February 2. J&J sent Bayer a 24-page single-spaced letter describing its position on the matter on February 13, so it has already marshaled its supporting arguments. Bayer's schedule is in keeping with the urgent relief being requested and the nature of preliminary injunction proceedings in Lanham Act cases. Indeed, Judge Engelmayer of the Southern District of New York ordered a nearly identical briefing and hearing schedule in *Bayer Healthcare LLC v. Perrigo Company PLC*, Case No. 22-CV-5931 (PAE) (S.D.N.Y. July 12, 2022) (ordering opposing papers to be filed three days after the order, reply papers to be filed six days after the order, and the hearing to take place eight days after the order). *See* Exhibit A. Given the irreparable harm that is being inflicted on Bayer and the misinformation being promoted to doctors and patients regarding critical medical treatment for cancer, a hearing in a week's time on the preliminary injunction application is appropriate.

J&J's lengthy response below demonstrates that it has the resources and ability to respond to Bayer's motion for emergency injunctive relief and contradicts its argument that it would be prejudiced by the schedule Bayer proposes. Further, in arguing that the timeline Bayer proposes is unwarranted, J&J contends that a sophisticated scientific audience will not be misled by its advertising, ignoring that its press release is directed to all audiences and disregarding that its own statements that "robust" science support its false advertising are inaccurate on their face and necessitate the emergency relief.[2]

Bayer disputes Defendants' contention that this Court lacks personal jurisdiction over them. Bayer contends that the Court has both general and specific jurisdiction over Defendants given the extent of their business activity in New York and the reach of their marketing efforts for ERLEADA® to New York health care providers and patients. *See Lelchook v. Société Générale de Banque au Liban S.A.L.*, 147 F.4th 226, 239 n.11 (2d Cir. 2025); *Jihshyr Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574 (2d Cir. 2020); *Johnson v. UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019). However, Bayer does not believe that this Joint Letter regarding scheduling is the place to brief the personal jurisdiction issues and reserves all its rights on this issue.

Bayer has limited its arguments to those relevant to the Court's request for a proposed scheduling order. For this reason, Bayer has not responded point-by-point to J&J's various arguments set forth below, as those are best addressed in the parties' subsequent submissions.

**Defendants' Position**

Bayer asks this Court—on a rushed timeline and a limited record—to declare JBI's truthful, scientific, and First Amendment-protected speech "false," and to gag JBI from disseminating that speech until this case reaches final judgment. But Bayer has failed to establish personal jurisdiction over JBI, so the Court lacks the power to enter any injunction. On the merits, Bayer's request is baseless. And in all events, Bayer's breakneck proposed schedule is prejudicial and improper.

---

[2] Bayer rejects J&J's suggestion that there will be depositions of all witnesses prior to a hearing. Bayer submits that there should not be pre-hearing discovery, and the case should proceed expeditiously to a preliminary injunction hearing.

The press release Bayer challenges was issued on February 2, 2026.  Bayer waited 21 days to file this lawsuit, and now seeks to manufacture an "emergency" where there is none.  Nor did Bayer substantively respond to JBI's detailed scientific explanations for the statements in its press release before filing this suit.  Instead of engaging with JBI on the science—or JBI's offer to consider any changes or disclaimers Bayer proposed to JBI's statements, which Bayer omits mention of in its filing—Bayer prematurely declared impasse and sought this Court's intervention.  Bayer has had weeks to retain outside experts, draft its papers, and file this suit.  JBI should receive at least as much time to respond.  Yet Bayer now demands that JBI respond to its nearly 300-page proffer in just 72 hours.  Many of Bayer's present arguments are new and were never previewed to JBI in its pre-suit letter.  Bayer's proposed schedule therefore denies JBI due process—and it is unjustified by any claimed "emergency."

For the reasons explained below, Defendants respectfully request a briefing schedule that provides Defendants with at least **21 days** to respond to Plaintiff's motion, and at least **seven days** between the deadline for Plaintiff to file its reply and any hearing.  Defendants agree that, given the technical issues, an evidentiary hearing with live witness testimony and cross-examination is appropriate.

### A.  Background

JBI and Bayer sell competing prostate cancer medications.  JBI's drug is called ERLEADA, and Bayer's is called NUBEQA.

JBI sponsored a study to examine how overall survival rates differed in a particular real-world population of patients treated with ERLEADA and NUBEQA.  This was a retrospective observational study—*i.e.*, a study involving a review of records of past medical treatments.  It was clearly disclosed as such in all of JBI's public statements.  The sophisticated oncologists and urologists who prescribe prostate cancer medications are aware of the differences between real-world studies and clinical trials, and they know that real-world studies are valuable in the practice of medicine because full-blown clinical trials—which can take years to conduct—are often impracticable or unavailable.

JBI's real-world study found that, in the cohort of patients examined, patients initiated on ERLEADA had a 51% reduction in the risk of death compared with those initiated on NUBEQA.  Earlier this month, JBI presented the results of that study at a scientific congress for prostate cancer research in Colorado, where it was accepted after the organizers vetted and approved a summary of the study's data, methodology, and results.  JBI also issued a press release accurately describing the study, and made a summary of the study methods and results available on its website exclusively for physicians.  All of these statements made clear that the study was a real-world, retrospective study, subject to limitations.

In conducting the study, JBI followed best practices for studies of this type.  A leading scientific body in the field of prostate cancer has already peer-reviewed the same materials that Bayer has reviewed, and it perceived no flaws.  But Bayer has a dissenting view.  It has now filed a Lanham Act suit, seeking to cast JBI's accurate references to the study and its findings as "false

3

advertising" because it disagrees with the study's disclosed methodology—and, at bottom, because it dislikes the study's results.

Bayer's seven declarants offer a hodgepodge of critiques—many of which are inconsistent with Bayer's own practices in conducting similar real-world evidence analysis for its own products. For example, Bayer speculates that the patients in the NUBEQA arm of the study were "sicker"—citing zero evidence for this claim. In reality, JBI controlled for the severity of patients' cancer, comorbid conditions, and all other major prognostic and treatment-selection factors relevant to survival. Bayer attacks the industry-standard method that JBI used to control for potential comorbid conditions as insufficient, even though Bayer uses the same index in its own studies. Bayer argues that size differences in the BAYER and NUBEQA cohorts are invalidating—even though unequal cohort sizes are ubiquitous in real-world studies, including Bayer's own, and are irrelevant to validity as long as the smaller arm is sufficiently large in absolute terms and the effect size of interest is sufficiently large (as is the case here). And Bayer asserts that the third-party medical records databases that JBI relied upon is potentially "incomplete," even though Bayer itself has used them for its own analyses.

Bayer's critiques are unfounded. But more immediately, Bayer's theory of "falsity" involves subtle and highly technical disputes over scientific methodology—the exact type that the Second Circuit has warned courts about attempting to referee under the Lanham Act, let alone on a highly expedited basis. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496-98 (2d Cir. 2013).

### B.  Bayer Has Failed to Establish Personal Jurisdiction Over Defendants

As the Complaint alleges, both Bayer and Johnson & Johnson are based in New Jersey, and JBI is based in Pennsylvania. The parties are organized under the laws of Delaware and Pennsylvania. Compl. ¶¶ 17-19. All those states are in the Third Circuit. The facts alleged in the Complaint have no connection to this District, State, or Circuit. The words "New York" do not even appear in the factual portion of the Complaint. It appears that Bayer has chosen this Court—rather than the district(s) where Defendants are based or incorporated, or where the challenged conduct took place—purely for forum-shopping reasons. It certainly has offered no other explanation for its decision to sue here.

The Southern District of New York is thus an improper venue for this dispute. And, even more fundamentally, this Court lacks personal jurisdiction over Defendants. "Because the Lanham Act does not provide for nationwide service of process," ordinary personal jurisdiction principles apply. *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004)).

Under those principles, this Court lacks *general* jurisdiction over either Defendant, since neither Defendant is "at home" (*i.e.*, principally based or incorporated) in New York. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 262 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 & n.19 (2014).

4

This Court also lacks *specific* jurisdiction over either Defendant, since neither one is alleged to have intentionally directed the purportedly false advertising at New York.  *See Bristol-Myers*, 582 U.S. at 262 (noting that, for specific jurisdiction, there must be "a connection" between the defendant's forum-directed conduct "and the specific claims at issue").  Bayer's assertion that JBI "market[s] and s[ells] ERLEADA" in New York is insufficient, because "Plaintiff's claims do not arise out of" those generalized marketing and sales activities.  *Mann v. Camp Fatima, Inc.*, 2023 U.S. Dist. LEXIS 236200, at *16 (E.D.N.Y. Nov. 8 2023).

Instead, the "false advertising" alleged in the Complaint consists of three documents on J&J's website.  The fact that JBI placed materials on a passive website that were theoretically accessible in New York is not enough.  *See DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 9 (2d Cir. 2018) ("[Plaintiff's] use of [a website], accessible from any state, to book her room does not show that the [defendant website operator] directed their business or advertising toward New York."); *Girl Scouts*, 102 F. App'x at 219-20 (mere fact that defendant's website was accessible in New York was not "purposeful activity" directed at New York for purposes of personal jurisdiction).

In the coming days, Defendants intend to file a motion to dismiss for lack of jurisdiction and/or transfer venue.  That motion is likely to be granted.  It makes no sense for this Court to set a highly rushed schedule on Bayer's PI motion, with an eye toward conducting a full evidentiary hearing next week, when this Court lacks the power to enter any injunction—and, indeed, this case must be dismissed in its entirety.  *See Visual Scis., Inc. v. Integrated Commc'ns, Inc.*, 660 F.2d 56, 59 (2d Cir. 1981) ("A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory [*i.e.*, preliminary] injunction against him."); *CleanSpark, Inc. v. Discover Growth Fund, LLC*, 485 F. Supp. 3d 494, 500 (S.D.N.Y. 2020) ("A district court is powerless to proceed on a motion for a preliminary injunction in the absence of personal jurisdiction." (cleaned up)).

### C.  Bayer's Proposed Schedule Is Prejudicial and Unjustified

Bayer did not seek a temporary restraining order.  Instead, Bayer served its preliminary injunction papers on Defendants yesterday at 2:08 p.m.  Those papers encompassed a 40-page complaint, a 35-page brief, and 216 pages of supporting materials, including seven substantive declarations—four from Bayer employees, and three from purported independent experts.  Bayer asks the Court to order Defendants to submit their full legal and factual response to this proffer just ***three days*** after receiving it.  Bayer further asks this Court to schedule a full evidentiary hearing on its motion in just ***eight days***.

Rule 65 requires that a party faced with a preliminary injunction motion be afforded "sufficient time to marshal his evidence and present his arguments against the issuance of the injunction."  *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 105 (2d Cir. 2009); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n.7 (1974) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.").  Courts have often held that time periods on the

order of what Bayer proposes deny fair process because they do not permit a meaningful opportunity to "marshal ... evidence and present ... arguments." *See, e.g.*, *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (discussing case law holding that granting two days and five days to submit affidavits and written submissions in opposition to PI motion was insufficient as a matter of law).

Three days is especially inadequate here, given the threshold jurisdiction problem that must be addressed; the highly technical nature of Bayer's critiques; the voluminous fact and expert testimony Bayer has submitted; and the importance of the speech at stake, which involves vital scientific matters in the field of oncology. Defendants cannot digest Bayer's nearly 300-page proffer; locate and retain rebuttal experts available to testify on short notice; and prepare rebuttal declarations, expert reports, and a responding brief in 72 hours. Still less can Defendants do all of that, while also taking pre-hearing depositions of Bayer's experts to probe the bases for their often-conclusory statements—as Defendants will likely seek leave to do. *See Sec. & Exch. Comm'n v. Lek Sec. Corp.*, No. 17CV1789 (DLC), 2019 WL 3729386, at *1 (S.D.N.Y. Aug. 7, 2019) (noting that defendant was permitted to depose plaintiff's "expert in market microstructure" in advance of PI hearing); *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17CIV8943CSJCM, 2018 WL 11260464, at *1 (S.D.N.Y. July 2, 2018) (same regarding plaintiff's "expert on racially polarized voting"). And, of course, JBI should not have to do any of this if—as it maintains—this Court lacks jurisdiction over it.

Bayer is aware that JBI's relevant scientists have other pressing obligations this week, including traveling to and participating in an important medical conference. Indeed, Bayer's proposed schedule appears tailor-made to disrupt that participation. Even with access to those scientists, preparing detailed declarations to rebut Bayer's critiques takes time—and that does not even address the matter of retained experts. Bayer also asserts that J&J "has already marshaled its supporting arguments" in a "24-page letter"—but that attorney letter, written in an attempt to engage constructively with Bayer, is not the same thing as preparing hundreds of pages of court-admissible fact and expert declarations. J&J's letter was also written in response to Bayer's initial cease-and-desist demand, which has morphed significantly in the interim. Many of Bayer's present arguments—e.g., with regard to the claimed "incomplete[ness]" of the underlying third-party data set, the adequacy of the Quan-Charlson Comorbidity Index, and the purported lack of full 24-month follow-up for all patients—are entirely new. Bayer never offered a substantive response to JBI's "24-page letter" during the parties' pre-suit exchange, so this is the very first time JBI is seeing Bayer's substantive response to any of JBI's positions. And Bayer does not and cannot explain why it needed 21 days to prepare its PI submission—from February 2, when JBI's press release was published, until February 23—yet JBI should be afforded only three days to respond in kind.

There is no "emergency" justifying such prejudice to JBI. Bayer has submitted no evidence that even a single member of the sophisticated prescribing audience (*i.e.*, oncologists and urologists) has been confused about the study's (disclosed) methodology, or has been misled into thinking that this real-world study provides the type of conclusive evidence that clinical trials provide. Bayer has submitted no evidence of a single lost sale since the publication of the

challenged materials 21 days ago.  Bayer has not pointed to any upcoming event that necessitates a hearing by next week.  All that Bayer offers is the same platitude offered in every Lanham Act case: that false advertising causes harm "each day [it] persists."  Such generic claims do not justify an extraordinary schedule that prevents JBI from meaningfully marshaling its evidence and presenting its defense.

Notably, Bayer did *not* seek a temporary restraining order during the pendency of preliminary injunction proceedings.  The Federal Rules of Civil Procedure make that option available when a plaintiff thinks there is a true emergency justifying immediate relief to preserve the status quo.  To counterbalance the heightened risk of error involved with such rapid action, temporary restraining orders are inherently limited to 14 days.  *See* Fed. R. Civ. 65(b).  Instead of invoking that procedure, Bayer has chosen to seek a *non*-time-limited preliminary injunction on the same timeline, and with the same deliberation, as a temporary restraining order.  That is not how preliminary relief is supposed to work.

As precedent, Bayer cites the schedule that Judge Engelmayer entered in a different Bayer case four years ago.  *See Bayer Healthcare LLC v. Perrigo Company PLC*, Case No. 22-CV-5931 (PAE).  That case is not comparable.  It had just two substantive declarants, compared to this case's seven (with three experts).  The issues were far simpler.  It involved the advertising of an over-the-counter nasal spray, not subtle methodological critiques of a peer-reviewed study comparing two prescription oncology drugs.  Moreover, Perrigo had already "voluntarily undertaken to either discontinue or modify" the challenged claims, leading to a prompt, pre-hearing settlement.  *Perrigo*, ECF No. 23 at 1.  That may well have influenced Perrigo's apparent willingness to proceed on Bayer's three-day deadline.

In point of fact, judges in this district routinely set normal briefing schedules for preliminary injunction motions, including in Lanham Act cases—even where ongoing "irreparable harm" is claimed (as is true in every such motion). *See, e.g.*, *Duracell U.S. Operations, Inc. v. Energizer Brands, LLC,* 25-cv-05020 (Cronan, J.), ECF No. 28 (ordering standard SDNY briefing schedule for PI motion in Lanham Act case); *RiseandShine Corp. v. Pepsico, Inc.*, 21-cv-06324 (Schofield, J.), ECF No. 85 (same); *Maxim Inc. et al v. Playboy Inc.*, 26-cv-00530 (Koeltl, J.), ECF No. 17 (same in trade-secret misappropriation case); *Bd. of Educ. of City School Dist. of City of New York v. United States Dep't of Educ. et al*, 25-cv-08547 (Subramanian, J.), ECF Nos. 1, 10 (same, in case challenging cancellation of grants to local schools, which "thr[ew] into chaos and uncertainty the Schools' futures—along with the plans of the approximately 7700 [New York] students who attend them"); *DearDoc, Inc. v. Cloudgain, Inc. et al*, 25-cv-08953 (Koeltl, J.), ECF No. 19: (after denying TRO in trade-secrets case, permitting movant move for PI, and setting 20-day deadline for defendant to respond).

Finally, Bayer's proposed schedule is incompatible with that of JBI's undersigned lead counsel, who has been representing JBI throughout this dispute.  That counsel has an oral argument next week before the Ninth Circuit Court of Appeals in California, which has been scheduled for months.  Bayer's requested hearing date would make it impossible for counsel to satisfy that preexisting client commitment, for no concrete reason.  JBI's counsel communicated this to Bayer's counsel, but unfortunately, Bayer was unwilling to accommodate his schedule.

7

### D. Conclusion

Plaintiffs' demand that JBI respond to its nearly 300-page proffer in just three days should be rejected. Such expedited preliminary injunction briefing makes no sense where Bayer has failed to establish jurisdiction over Defendants, rendering the motion moot and requiring dismissal of the entire case. It is also highly prejudicial to JBI's defense, unjustified by any true emergency, and raises an unacceptable risk that First Amendment-protected speech will be improvidently censored. Should this Court find that it has personal jurisdiction and that venue is proper, Defendants request **21 days** to respond to Plaintiff's motion on the merits, and **seven days** following receipt of any reply papers to prepare for a hearing.

*    *    *

The parties thank the Court for its attention to this matter.

Respectfully submitted,

Dated: February 23, 2026

| | |
|---|---|
| */s/ Lynn K. Neuner*_____ | */s/ Jonah M. Knobler*_____ |
| Lynn K. Neuner | Jonah M. Knobler |
| Laura Brett | Amy N. Vegari |
| Nicholas Cunha | Clinton W. Morrison |
| SIMPSON THACHER & BARTLETT LLP | Margaret M. O'Neil |
| 425 Lexington Avenue | PATTERSON BELKNAP WEBB & |
| New York, New York 10017 | TYLER LLP |
| Telephone: (212) 455-2000 | 1133 Avenue of the Americas |
| lneuner@stblaw.com | New York, NY 10036 |
| nicholas.cunha@stblaw.com | Telephone: (212) 336-2000 |
| | jknobler@pbwt.com |
| Simona G. Strauss | avegari@pbwt.com |
| 2475 Hanover Street | cmorrison@pbwt.com |
| Palo Alto, California 94304 | moneil@pbwt.com |
| Telephone: (650) 251-5000 | *Attorneys for Defendants Johnson & Johnson* |
| sstrauss@stblaw.com | *and Janssen Biotech, Inc.* |

*Attorneys for Plaintiff Bayer HealthCare LLC*

8

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :
BAYER HEALTHCARE LLC,                              :
                                                   :
                        Plaintiff,                 :    No. 22 Civ. 5931 (PAE)
                                                   :
            v.                                     :
                                                   :
PERRIGO COMPANY PLC,                               :
                                                   :
                        Defendant.                 :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - :
                                                   x

## ORDER TO SHOW CAUSE

Upon the Complaint of Plaintiff Bayer Healthcare LLC, the Affidavit of Catherine Vennat, and the exhibits attached thereto, the Affidavit of Dr. Richard Weber, and the exhibits attached thereto, the Declaration of Lynn K. Neuner, and the exhibits attached thereto, the accompanying Memorandum of Law in support of Plaintiff's Motion for Preliminary Injunction, and any other documents of which the Court may take judicial notice;

NOW, THEREFORE, IT IS HEREBY:

ORDERED, that the above named Defendant show cause before this Court in Courtroom 1305 of the United States District Court for the Southern District of New York, at the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, NY 10007 on July 20, 2022, at 2 p.m., why an order should not issue pursuant to Rule 65 of the Federal Rules of Civil Procedure granting a preliminary injunction barring the continued dissemination of the advertisements submitted as Exhibits A, B, C, and D to the Complaint, and barring the dissemination of claims, in words of substance, that: (1) Nasonex provides relief twice as fast as other OTC allergy sprays; (2) Nasonex "works" at 12 hours or 2x faster than leading nasal

2

allergy sprays; (3) Nasonex provides "fast" relief; and (4) antihistamine pills and antihistamine sprays cannot be compared with respect to onset of action to other OTC steroid nasal sprays.

IT IS FURTHER ORDERED, that Defendants shall serve and file opposing papers, if any, on or before July 15, 2022, and Plaintiff shall serve and file any reply papers on or before July 18, 2022;

IT IS FURTHER ORDERED, that personal service, service by mail, or service by electronic mail of the Complaint, this Order, and all papers and pleadings previously filed in this action upon counsel for Defendant Perrigo plc, on or before July 12, 2022, at 7:00 p.m. of that day, shall be deemed good and sufficient service thereof; and

IT IS FURTHER ORDERED, that because Plaintiff is not requesting any temporary restraint, but rather requesting only an expedited hearing and ruling on Plaintiff's motion for a preliminary injunction, there is no likelihood of harm and no security is required under Rule 65(c) of the Federal Rules of Civil Procedure at this time.

**SO ORDERED.**

Signed on this 12th day of July, 2022.

Paul A. Engelmayer
United Stated District Judge