**Application DENIED. Courts have "considerable discretion" to stay discovery pending the outcome of a dispositive motion. *Psychic Readers Network, Inc. v. A&E Television Networks LLC*, 2025 WL 1380956, at *1 (S.D.N.Y. May 13, 2025). When assessing whether to stay discovery, courts consider "(1) the breadth of discovery sought (and the burden of responding to it), (2) the strength of the underlying motion, and (3) the risk of prejudice to the party opposing the stay." *Id.* The Court concludes, in its discretion, that a blanket stay of all discovery is inappropriate at this time. Should J&J have more tailored objections to Bayer's discovery requests as unduly burdensome and/or disproportionate, it can file an appropriate discovery motion at that time. The Clerk of Court is respectfully directed to terminate ECF Nos. 88 and 89.**

Patterson Belknap

July 30, 2026

**Via ECF**

The Honorable Judge Dale E. Ho
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

**SO ORDERED.**

Dale E. Ho
United States District Judge
Dated: July 30, 2026
New York, New York

**Re: *Bayer HealthCare LLC v. Johnson & Johnson, et al.*, Case No. 26-CV-1479**

Dear Judge Ho:

Defendants (together, "J&J") respectfully move for a stay of discovery against J&J pending the Court's ruling on J&J's pending motion for judgment on the pleadings (the "Motion"). Bayer opposes the proposed relief because it believes discovery should proceed. The parties conferred today, at 11:15 am, where J&J informed Bayer that it believes the parties are at an impasse and would be requesting the Court's intervention.

## Background

In this action, Bayer challenges certain J&J communications about a scientific study comparing the parties' respective prostate cancer medications (the "Study"). ECF 78. Bayer contends that the Study's methods are flawed and that, as a result, J&J's statements about the Study are "false and misleading advertising." *Id.* ¶ 1.

On February 23, 2026, Bayer sued and moved for a preliminary injunction. ECF 1, 6. On April 17, the Court denied Bayer's motion, concluding that Bayer "failed to establish a likelihood of success on the merits." ECF 69 at 32, 41. The Court found that the Study used "reliable" and "widely-accepted" scientific methods—and that this was "not a particularly close call." *Id.* at 21. The Court also found that J&J's communications "accurately represent the Study's conclusions" and "adequately disclose the Study's methodologies and . . . limitations." *Id.* at 2.

Bayer filed an Amended Complaint on June 15, 2026. ECF 78. Its core theories remain the same, though Bayer now alleges that J&J's statements were "misleading" in addition to "literally false." Days later, Bayer served 46 burdensome document requests seeking, among other things, "[a]ll Documents concerning": "the design, conception, planning, development, and approval of the [Study]," "any internal discussions, analyses, or assessments regarding the limitations, weaknesses, or potential criticisms of the [Study]," and "communications by Defendants' sales representatives or medical science liaisons with physicians regarding the [Study], the Press Release, or the comparison of ERLEADA® and NUBEQA® with respect to overall survival or risk of death, including call notes, records, and reports of physician interactions." *See* Ex. 1 at 5, 10. Bayer also seeks extensive information *unrelated* to the Study, including all promotional materials, budgets, and expenditures concerning Erleada. *Id.* at 9.

On July 28, the full Study manuscript was published in *Advances in Therapy*, a peer-reviewed scientific journal operated by the same publisher as the renowned journal *Nature*. ECF

87-2. That same day, J&J filed the Motion, seeking full dismissal of Amended Complaint. ECF 85, 86. Given these developments, J&J now seeks a stay of all discovery propounded by Bayer against J&J pending the resolution of J&J's dispositive motion.

## Legal Standard

Courts have "considerable discretion" to stay discovery pending the outcome of a dispositive motion. *Psychic Readers Network, Inc. v. A&E Television Networks LLC*, 2025 WL 1380956, at *1 (S.D.N.Y. May 13, 2025) (Ho, J.). When assessing whether to stay discovery, courts consider "(1) the breadth of discovery sought (and the burden of responding to it), (2) the strength of the underlying motion, and (3) the risk of prejudice to the party opposing the stay." *Id.*

## Argument

### A. The Strength of J&J's Motion Favors a Stay

Courts considering a motion to stay discovery ask only whether the pending motion's arguments for dismissal are "substantial" or "potentially viable"—"not whether [they] will ultimately be successful." *Id.* at *2; *see also Sigma Lithium Corp. v. Gardner*, 2024 WL 2867504, at *1 (S.D.N.Y. June 4, 2024) (Ho, J.) (granting stay where Court's "initial review of the arguments presented in support" indicated "the motion is not frivolous"). J&J easily meets this standard. Indeed, this Court has already held that Bayer is unlikely to succeed on its claims, which remain based on the same facts and theories post-amendment. *See Johnson v. Krebs*, 2019 WL 162742, at *2 (D.S.D. Jan. 10, 2019) (noting court's PI-stage finding that plaintiffs had "little likelihood of success" when staying discovery pending 12(b)(6) motion).

J&J's Motion argues primarily that Bayer's claims are barred under the First Amendment and *ONY, Inc. v. Cornerstone Therapeutics*, 720 F.3d 490 (2d Cir. 2013). *ONY* affirmed the dismissal of false-advertising claims on a Rule 12 motion and "conclude[d] that, to the extent a speaker or author draws conclusions from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement, those statements are not grounds for a claim of false advertising under the Lanham Act [or state law]." *Id.* at 498. This Court has already noted that this case is "similar" to *ONY* "in many ways"; that "there is no assertion of fraudulent data or analysis in the Study"; and that J&J's communications "accurately describe[]" the study's "overall methodological approach," its "limitations," and its "results." ECF 69 at 34, 39-40.

Bayer's main argument against *ONY*'s application—that the Study had not been published in a peer-reviewed journal—is now moot. Bayer's argument that *ONY* is limited to non-commercial academic speech is wrong, too. This Court has already recognized that it "may not be possible to harmonize" that argument with *ONY* itself. *Id*. at 36, 39 n.12. J&J's Motion confirms that *ONY* applies to commercial speech for several reasons. Among them: (1) restricting *ONY* to non-commercial contexts would render it pointless, as Lanham Act claims are *already* limited to statements made "in commercial advertising or promotion," 15 U.S.C. 1125(a)(1)(B); and (2) *ONY* dismissed not just claims based on statements in a journal article, *but also* those based on the defendant's "press release" and "promotional materials." *See* ECF 86 at 6-11.

As J&J's Motion explains, *ONY*'s exception for statements that "misrepresent" a study's methods or conclusions is not applicable here. The Court has already found that J&J's statements "adequately disclose the Study's methodologies" and "accurately represent the Study's conclusions." ECF 69 at 2. Bayer contests the Court's preliminary finding that J&J's Press Release was directed solely to physicians, insisting (without any factual basis) that lay patients also viewed it. Even if that were so, Bayer does not plausibly allege that the Press Release "ha[d] the capacity to deceive a *substantial* portion of [its] *intended* audience." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 450 (S.D.N.Y. 2012) (emphasis added). Importantly in that regard, under the Lanham Act, "'[m]isleading' is not a synonym for 'misunderstood[.]'" *Mead Johnson & Co. v. Abbott Laby's*, 209 F.3d 1032, 1034 (7th Cir. 2000). Truthful statements about science, which are understood correctly by readers familiar with scientific conventions, do not become "misrepresentations" merely because the least scientifically sophisticated subset of a publication's readership may lack the basis to fully comprehend them. *See* ECF 86 at 17-25.

**B. The Remaining Factors Favor a Stay**

The remaining factors also favor a stay. As to breadth and burden, Bayer's discovery will plainly be "voluminous and expensive." *Psychic Readers*, 2025 WL 1380956, at *1. Virtually all of Bayer's 46 initial document requests (*see* Ex. 1) demand "All Documents" concerning a sweeping array of topics over a four-and-a-half-year span. *See, e.g.*, *Goldenstein v. City Univ. of N.Y.*, 2025 WL 3471131, at *2 (S.D.N.Y. Dec. 3, 2025) (granting stay where "[p]laintiff requests extensive discovery, including all documents relating to various subject matter covering more than three years") (cleaned up). Again, Bayer seeks every scrap of paper relating to the Study itself, or its dissemination to anyone. Bayer also seeks extensive information *unrelated* to the Study, including "[a]ll promotional materials" related to Erleada and "[a]ll documents concerning any expenditures" on Erleada's marketing. Ex. 1 at 9-11. Collecting and reviewing this broad, competitively sensitive information would force J&J to incur major expenses on top of the enormous costs it has already incurred to defend Bayer's meritless PI motion. That should not happen until the Court has determined whether Bayer states a claim at all. That is all the more true "in this context, where there are potential defenses rooted in First Amendment freedom of speech," since "the expense and burden of defending against a potentially meritless lawsuit c[an] itself chill First Amendment rights." *Haggai v. Kiswani*, 2026 WL 1283362, at *2 (S.D.N.Y. May 11, 2026).[1]

Finally, granting the Stay will not unfairly prejudice Bayer. *See, e.g.*, *Spinelli v. NFL*, 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) ("[A] stay pending determination of a dispositive motion" "will neither substantially nor unduly delay the action" and "does not amount to unfair prejudice.") (cleaned up). Any "delay . . . to date can be attributed, primarily, to [Bayer's] failed request for a preliminary injunction." *Gazzola v. Hochul*, 2024 WL 6883855, at *2 (N.D.N.Y. Dec. 19, 2024). And, as the PI hearing showed, Bayer has no evidence of *any* harm—let alone harm compelling enough to justify proceeding with Bayer's discovery in these circumstances.

[1] Even if Bayer were right that some of the Press Release's statements "misrepresent" the Study's methods or conclusions to lay patients, Bayer's discovery would be limited to *those collateral "misrepresentations"*—not the full-blown discovery Bayer currently seeks. *See* Ex. 1.

Respectfully submitted,

Jonah M. Knobler

cc: All counsel of record (via ECF)